UNITED STATES BANKRUPTCY COURT

DISTRICT OF CONNECTICUT

HARTFORD DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE No.        14-20301 (JJT) |
| SAVE HOME ENERGY, INC., | ) | CHAPTER        7 |
| DEBTOR. | ) | |
| | ) | |
| | ) | |
| BONNIE C. MANGAN, CHAPTER 7 | ) | |
| TRUSTEE, | ) | ADV. PRO. No.        15-02048 (JJT) |
| | ) | |
| PLAINTIFF, | ) | |
| V. | ) | |
| | ) | RE: ECF Nos.        25, 27, 30 |
| ROBERT K. MASON AND | ) | |
| ROSEMARY F. MASON, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**<u>APPEARANCES</u>**

| | |
|---|---|
| Lawrence W. Andrea, Esq. | Attorney for the Plaintiff |
| 40 Richards Avenue, 3rd Floor | |
| Norwalk, CT 06854 | |
| | |
| Gregory Arcaro, Esq. | Attorney for the Defendants |
| Grafstein and Arcaro, LLC | |
| 10 Melrose Dr. | |
| Farmington, CT 06032 | |
| | |
| Bonnie C. Mangan, Esq. | Chapter 7 Trustee |
| The Law Office of Bonnie C. Mangan, P.C. | |
| 1050 Sullivan Avenue, Suite A3 | |
| South Windsor, CT 06074 | |

## MEMORANDUM OF DECISION GRANTING PARTIAL SUMMARY JUDGMENT

### I.    INTRODUCTION

Before the Court is an adversary proceeding in which the Plaintiff, Bonnie C. Mangan, the duly appointed Chapter 7 Trustee ("Trustee"), seeks to avoid and recover, pursuant to 11 U.S.C. § 547(b), several prepetition transfers of funds from the Debtor, Save Home Energy ("Debtor" or "SHE") to the Defendants, Robert K. Mason and Rosemary Mason (collectively, the "Defendants" or "Mr. and Mrs. Mason"). On June 30, 2016, the Defendants filed a Motion for Summary Judgment with a Memorandum of Law in Support of Motion for Summary Judgment on Counts One and Two of Plaintiff's Amended Adversary Complaint ("Summary Judgment Motion", ECF No. 25), and a Supplemental Local Rule 56(a)1 Statement ("Rule 56(a)1 Statement"). On July 21, 2017, the Trustee filed a Memorandum in Opposition to Motion for Summary Judgment ("Opposition Motion", ECF No. 27) with a Supplemental Local Rule 56(a)2 Statement ("Rule 56(a)2 Statement"). On August 8, 2016, the Defendants filed a Memorandum in Reply to Trustee's Objections to Motion for Summary Judgment ("Reply Motion", ECF No. 30). For the reasons herein, the Summary Judgment Motion is granted in part and denied in part.

### II.    JURISDICTION

The United States District Court for the District of Connecticut has original jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This Court possesses the authority to hear and determine the proceeding on reference from the District Court pursuant to 28 U.S.C. § 157(a) and (b)(1).[1] This is a 'core proceeding' pursuant to 28 U.S.C. § 157(b)(2)(I).

---

[1] Defendant has admitted that this Court has jurisdiction to hear and determine this matter. Am. Compl. to Avoid Preferential Transfers, ECF No. 12 ¶ 2; Answer and Affirm. Defenses, ECF No. 5 ¶ 2; Answer and Affirm. Defenses, ECF No. 6 ¶ 2.

III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds that the following facts are undisputed based upon a review of the record, the relevant pleadings of this adversary proceeding and the bankruptcy case, and the Rule 56(a)1 Statement of the Defendants and the Rule 56(a)2 Statement of the Plaintiff.

At all relevant times, the Debtor and its related companies were engaged in the construction business. Defendant Robert K. Mason ("Mr. Mason"), was an officer of SHE, and Defendant Rosemary Mason ("Mrs. Mason") was a 51% owner of SHE. Mr. Mason served as the company's president and was actively involved in the business affairs of the company, as well as, to some extent, the company's financial affairs. Mrs. Mason did not participate in the business activities of SHE. Ronald Biffinger ("Mr. Biffinger") was a 49% shareholder of SHE and served as the company's vice-president. Mr. Magdalenski, another employee of SHE, served as its bookkeeper with the primary function of recording its financial transactions. Mr. Mason and Mr. Biffinger were also members of a related company, Executive Interiors Construction, LLC ("EIC"), and acted as its principal agents with signatory authority on EIC's accounts. Funds were transferred between the accounts of SHE and those of EIC during 2012 and 2013, on more than one occasion. In the normal course of its business operations, officers and employees would pay for SHE expenses on their personal credit cards.

On November 21, 2011, the Debtor executed a promissory note ("Mason Note") in favor of Mr. Mason. Mr. Mason received monthly payments from SHE in the amount of $1,288.00 from February of 2013 through August of 2013 pursuant to the Mason Note. Payments were made on March 6, 2013, March 21, 2013, April 8, 2013, May 6, 2013, June 25, 2013, July 10, 2013, and August 7, 2013, totaling $9,016.00. The last payment made to Mr. Mason pursuant to the Mason Note was made in August 2013.

On September 26, 2013, Mr. Mason withdrew $4,500.00 from the SHE bank account. On October 10, 2013, Mr. Mason withdrew $1,120.00 from the SHE bank account. On October 17, 2013, Mr. Mason withdrew $1,000.00 from the SHE bank account.

During the year before SHE filed for bankruptcy, Mr. Mason provided services to SHE. During this time, SHE paid premiums to Chubb Insurance Company ("Chubb") for Mr. Mason's property insurance. SHE's payments to Chubb inured to the personal benefit of Mr. and Mrs. Mason.

After incurring substantial losses that SHE could not recover from, Mr. Mason made the decision to wind-down the business in August of 2013. All, or mostly all, of its employees were laid off, and Mr. Mason filed for unemployment compensation in September of 2013. On February 20, 2014, SHE filed for relief under Chapter 7 of the Bankruptcy Code, and Mr. Mason signed the petition as the responsible party. At the time, there was approximately $50,000 in its bank accounts. During the year before SHE filed for bankruptcy relief, it paid several creditors, including those to which Mr. Mason had not pledged a personal guarantee, as well as certain debts owed that were owed to the Defendants.

This adversary proceeding was commenced by the Trustee on September 22, 2015. The Trustee subsequently filed an Amended Complaint to Avoid Preferential Transfers[2] on March 16, 2016 ("Amended Complaint", ECF No. 12). Count One of the Amended Complaint seeks to avoid and recover, pursuant to 11 U.S.C. §547, the value of the aforementioned allegedly preferential transfers made by SHE to the Defendants. The Trustee alleges that during the one year period prior to the date that SHE filed for relief, at Mr. Mason's direction, SHE made: 1) a series of direct payments to the Defendants totaling $22,882; 2) premium payments to Chubb

---

[2] The only change reflected in the Amended Complaint is the value of the transfers. The Trustee reported that the discrepancy may have been the result of a calculation error. Local Rule 56(a)2 Stmnt fn. 1.

Insurance on behalf of the Defendants totaling $6,232.75; and 3) a payment made by SHE or EIC on a Bank of America debt owed by the Defendants totaling $5,472. The transfers that the Trustee seeks to avoid are as follows:

1) Promissory Note Payments ($9,016.00) ("Transfer One")

2) July 10, 2013 Payment ($5,700.00) ("Transfer Two")

3) September 26, 2013 Cash Withdrawal ($4,500.00) ("Transfer Three")

4) October 10, 2013 Cash Withdrawal ($1,120.00) ("Transfer Four")

5) October 17, 2013 Cash Withdrawal ($1,000.00) ("Transfer Five")

6) Insurance Payment ($6,232.75) ("Transfer Six")

7) Bank of America Payments ($5,472) ("Transfer Seven")

Count Two also seeks equitable subordination of the Defendants' claims against the estate to those of the other creditors.[3]

The Defendants filed their Summary Judgment Motion on June 30, 2016. The Defendants do not dispute that certain payments were made to them or on their behalf during the one year period of time prior to filing, but instead claim that the payments are either subject to defenses pursuant to 11 U.S.C. § 547(c)(1) and (2), or that the Defendants never received the alleged transfers at all. Finally, the Defendants also assert that their claims are not subject to subordination for inequitable conduct.[4]

The Trustee filed the Opposition Motion on July 21, 2016, requesting denial of the Summary Judgment Motion on the following grounds: 1) genuine issues of material fact are in

---

[3] In her Opposition Motion, the Trustee states that she does not intend to seek such relief in the instant proceeding, but does intend to raise the claim when the Court addresses the Defendants' claim in the main bankruptcy case. Opp'n Mot. at 11.

[4] In their Summary Judgment Motion, the Defendants state they presume that the Trustee will maintain her subordination claim if Mr. Mason is found to have an accepted claim against the Estate. Summ. J. Mot. p. 12 n.4.

dispute; 2) the representations made by Mr. Mason are uncorroborated and supported by no evidence; and 3) assuming the accuracy of his statements, Mr. Mason can be considered an initial transferee under 11 U.S.C. § 550(a)(1) and some of the transfers to him are avoidable under 11 U.S.C. § 547. The Defendants filed the Reply Motion on August 4, 2016, limited to Transfers Two, Three, Four and Five. They argue first that they properly relied on Mr. Mason's affidavits in compliance with Fed. R. Civ. P. 56(c)(1)(A). With respect to Transfer Two, the Defendants argued that the Trustee failed to comply with Rule 56(e) in its reliance on an affidavit in the record, and ask that the related facts be deemed admitted, and summary judgment granted, as to that transfer. As to Transfers Three, Four and Five, the Defendants argue that the Trustee failed to establish facts supporting an essential element of the preference claim, that the payments were for or on account of an antecedent debt.

IV.    PRELIMINARY MATTERS

A.  Sufficiency of the Affidavits

In her Opposition Motion, the Trustee argues that the Defendants rely nearly exclusively upon the affidavit of Mr. Mason ("Mason Affidavit") and the affidavit of Mr. Magdalenski ("Magdalenski Affidavit") and, running afoul of Fed. R. Civ. P. 56(c), refer to almost no supporting evidence. It is the Trustee's position that the sworn affidavits submitted in support of the Defendants' Rule 56(a)1 Statement assertions must also be supported by other evidence in the record. The Defendants respond that Mr. Mason's affidavit is proper factual support under Fed. R. Civ. P. 56(c)(1) and Local Rule 56(a)1. The Court agrees.

Fed. R. Civ. P. 56(c) provides that a party asserting that a fact cannot be genuinely disputed must support the assertion by citing to "particular materials in the record", which include "*affidavits* or declarations". Fed. R. Civ. P. 56(c)(1)(emphasis added). The affidavit or

declaration must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*

Local Rule 56(a) mirrors the Fed. R. Civ. P. 56 in requiring that a movant "set forth a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried" and provides that the facts "set forth in said statement and *supported by the evidence* will be deemed admitted unless controverted". D. Conn. L. Civ. R 56(a)1 (emphasis added). The rule further provides the local mechanisms for supporting such assertions, and requires that each statement of material fact by a movant in the Local Rule Statement "must be followed by a specific citation to (1) the *affidavit* of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)3 (emphasis added).

Here, the Trustee's assertion that the Defendants' affidavits themselves be "supported by the evidence" is misplaced, because the statute explicitly designates affidavits as one of the record materials that may be submitted in support of fact positions set forth in a Rule 56 Statement. The only requirement is that where, as here, "a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(e)); *See also Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1997) ("In ruling on a motion for summary judgment, the district court may rely on *any* material that would be admissible or usable at trial.") (emphasis added).

The Defendants here rely on the sworn affidavits of Mr. Mason and Mr. Magdalenski, both of whom, having personal knowledge of the facts sworn to in their capacities as officer and bookkeeper of SHE, respectively, are competent to testify as to those facts at trial. That the Trustee may disagree with the assertions in the affidavits, or attempt to assail their credibility is alone insufficient to strike the affidavits, or to meet her burden of showing there are genuine disputes of material fact. Therefore, the Court finds that the affidavits are properly relied upon in accordance with Fed. R. Civ. P.56 and Local Rule 56.

As our District Court has pointed out, Local Rule 56(a)1 specifically provides that a court will consider only statements "supported by the evidence, and parties should assume that courts will undertake this obligation faithfully and fully review the proffered evidence of record and draw appropriate conclusions". *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 231 (D. Conn. 2008) (citing *Ricci v. Destefano*, No. 3:04 CV 1109 JBA, 2006 WL 2666081, at *3 (D. Conn. Sept. 15, 2006)). The Court will accordingly consider the affidavits in addressing the merits of the Defendants' motions.

> B.  Compliance with Fed.R.Civ.P. 56(e)

In their Reply Motion, the Defendants also ask the Court to deem admitted the factual claims in their Rule 56(a)1 Statement at ¶¶12, 13 and 14, on the grounds that the Trustee violated Fed. R. Civ. P. 56(e) by failing to properly deny those claims in her corresponding Rule 56(a)2 Statement.

In their Rule 56(a)1 Statement, the Defendants claim that Transfer Two was an advance from Mr. Mason to SHE to cover payroll, which was later repaid by Mr. Mason once there were sufficient funds in the SHE account.[5] In her Rule 56(a)2 Statement, the Trustee denies those

---

[5] Local Rule 56(a)1 Statement ¶¶12-14.

assertions, relying upon the prior testimony of Mr. Magdalenski and a corresponding exhibit[6] titled "SHE Income Statement for the six months ending June 30, 2013" ("June Income Statement"). The Defendants argue that because Mr. Magdalenski was never asked about Transfer Two in the cited deposition, the corresponding facts in their Rule 56(a)1 Statement should be deemed admitted.

Fed.R.Civ.P. 56(e) provides mechanisms through which a court can address a party's failure to properly support an assertion of fact or to properly address another party's assertion of fact as required by subparagraph (c), one of which is considering that fact as undisputed for purposes of the motion, reflecting the "deemed admitted" provision in Local Rule 56. *See* Fed. R. Civ. P. 56, Advisory Committee Notes; *See* Local Rule 56.

Here, the Trustee complied with Rule 56(e). Although Mr. Magdalenski was not specifically asked about Transfer Two, when shown the June Income Statement and asked if it was possible for deposits that were made into the company to not be reflected in the statement, Mr. Magdalenski testified "I don't know why that would happen, but no. Unless the bank made an error or something like that".[7] Upon the Court's review of the June Income Statement, also cited in support of the Trustee's denial, Transfer Two does not appear to be reflected in the document. The Trustee's reliance upon Mr. Magdalenski's testimony and corresponding exhibit are ostensibly offered to show that if a deposit was made into SHE's account, it would be reflected on the Income Statement, which would support the Trustee's denial of Mr. Mason's assertion that Transfer Two was, in fact, deposited.

Even if the Court finds that the Trustee violated Fed . R. Civ. P. 56(e), "nothing requires a district court to deem evidence admitted… simply because a non-movant fails to comply with

---

[6] Local Rule 56(a)2 Stmt. ¶¶12-14 citing Magdalenski 2004 Exam at 75-77, Ex. 13X.

[7] *Id.*

local rules". *Pensionsversicherungsanstalt v. Greenblatt*, 556 F. App'x 23, 25 (2d Cir. 2014), as amended (Mar. 5, 2014); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001) (finding that a court has broad discretion to determine whether to overlook a party's failure to comply with local court rules). Notwithstanding the Trustee's inartful proffer, the Court, having scrutinized the relevant portions of the record, will decline to treat these facts as admitted.

V.    DISCUSSION

     A.  Summary Judgment Standard

Generally, Federal Rule of Civil Procedure 56(c), made applicable here by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Concomitant with the dictates of Federal Rule of Civil Procedure 56(c), each undisputed fact set forth in a Local Rule 56(a)1 Statement must be supported by citation to admissible record evidence, including "the affidavit of a witness competent to testify as to the facts at trial". D. Conn. Local R. 56(a)(3); *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party may satisfy this burden "by showing…that there is an absence of evidence to support the nonmoving

party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir.2002) (per curiam) (internal quotations and citations omitted); *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995).

Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment ... must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). Similarly, a party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993).

When a defendant moving for summary judgment has pointed to the absence of evidence to support an essential element on which the plaintiff has the burden of proof, the plaintiff, in order to avoid summary judgment, *must* show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial. *Azrielli*, 21 F.3d at 516–17 (emphasis added) (citing Celotex, 477 U.S. at 322–23, 106 S.Ct. at 2552–53); Fed.R.Civ.P. 56(c). If the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2548.

In deciding a motion for summary judgment, courts must determine if there are any factual issues to be tried, while at the same time, resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

B.  Preference Provisions

The following provisions of 11 U.S.C. § 547, which empower a trustee to recover as preferences certain payments made to creditors within the one year period preceding the date of filing, are relevant to the instant proceeding. The Trustee has the burden of proving, by a preponderance of the evidence, "transfers of the debtor's property which are: 1) made to or for the benefit of a creditor; 2) for or on account of an antecedent debt; 3) while the debtor was insolvent; 4) within ninety days of the filing (or within one year of the filing if made to an insider); and 5) which enable the creditor to receive more than it would otherwise receive in a Chapter 7 liquidation case." *In re Artha Mgmt., Inc*., 174 B.R. 671, 676–77 (Bankr. S.D.N.Y. 1994); *See* 11 U.S.C. § 547(b); 11 U.S.C. § 547(g). "A transfer which is proven avoidable under § 547(b) may be recovered from the initial transferee or the entity for whose benefit the transfer was made." *In re Artha,* 174 B.R. at 677; *See* 11 U.S.C. § 550(a).

Here, the Trustee seeks to avoid all seven transfers as preferential.[8] As to Transfers Three, Four, Five and Six, the Defendants attack the Trustee's allegations[9], or claim a lack of factual proof as to the first and second elements of the preference claim, namely, that the

---

[8] The Defendants admit that the Debtor made certain payments to them or on their behalf within the one-year period prior to filing, and that the Debtor was insolvent during such time. Mr. Mason Answer and Affirm. Defenses ¶ 4, 7.
[9] To the extent that the Defendants assail the sufficiency of the pleadings, the Court finds, for the purposes of this Memorandum of Decision, that the Amended Complaint, however inartful, sufficiently alleges the elements of the preference and gives fair notice of the claim and grounds upon which it rests, pursuant to Fed. R. Civ. P. 8 and 12.

transfers were to or for the benefit of a creditor, or were for or on account of an antecedent debt owed by the debtor.

### i.  To or for the benefit of a creditor

Under § 547(b)(1), the Trustee must prove that the transfer is "to or for the benefit of a creditor". 11 U.S.C. § 547(b)(1). A "creditor" is defined as, in relevant part, an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."11 U.S.C. § 101(10)(A). A "claim" is defined, in relevant part, as a "right to payment". 11 U.S.C. § 101(5)(A).

### ii.  For or on account of an antecedent debt owed by the debtor before such transfer was made

Under § 547(b)(2), the Trustee must prove that a transfer is "for or on account of an antecedent debt owed by the debtor before such transfer was made". 11. U.S.C. § 547(b)(2). For the purposes of this section, an "antecedent debt" is "a debt which is incurred prior to the relevant transfer." *See In re Artha*, 174 B.R. at 678 (citing In re Intercontinental Publications, Inc., 131 B.R. 544, 549 (Bankr. D. Conn. 1991)). A debt is incurred "when it arises and not when payment is due." *In re Big Apple Volkswagen, LLC*, No. 11-11388 JLG, 2016 WL 1069303, at *10 (Bankr. S.D.N.Y. Mar. 17, 2016) (citing *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 347 (Bankr. S.D.N.Y. 1999)).

*Transfers Three, Four and Five—Cash Withdrawals*

The Defendants first argue that Transfers Three, Four and Five were not to or for the benefit of the Defendants, since they did not retain any portions of the withdrawals. In their Reply Motion, the Defendants also argue that the Trustee failed to establish that a material fact remains to be tried as to a key element of the preference claim, namely, that the withdrawals are for or on account of an antecedent debt. For the following reasons, the Court agrees.

The Defendants claim that Transfer Three was utilized to pay SHE employees and to obtain fuel for SHE vehicles, Transfer Four was used to pay labor for SHE business operations, and Transfer Five was used to pay labor to clean the SHE business location, and were therefore not to or for their benefit. In support of their position, the Defendants rely on the affidavit of Mr. Mason, and one page of handwritten notes that Mr. Mason claims is an accounting of Transfer Four.[10]

In her Opposition Motion, the Trustee replies that Transfers Three, Four and Five, withdrawn on September 26, 2013, October 10, 2013 and October 17, 2013, respectively, could not have gone to pay employees of SHE because they had already been laid off by September 15, 2013. She relies on the deposition of Mr. Mason himself, who testified that by mid-September, all of its field employees and most of its back office employees were laid off[11], and the deposition of Mr. Biffinger who testified that employees were being laid off during or about the middle of September 2013[12]. The Trustee, relying on an exhibit titled "Save Home Energy Income Statement for the nine months ending September 30, 2013" ("September Income Statement"), also advances that the transfers are "ghosts" because no SHE financial statement shows the transactions.[13]  Finally, the Trustee argues that the company was no longer operating because both Mr. Mason and Mr. Biffinger had already filed for unemployment benefits.[14]

Here, the Court finds that the while the Trustee raised a genuine dispute as to whether the payments were to or for the benefit of a creditor, she failed however to adduce any facts supporting that the transfers were for or on account of an antecedent debt, which, as the

---

[10] Mason Aff. ¶ 22 citing Defendants' Exhibit B.
[11] Rule 56(a)2 Stmt. ¶ 16 citing Mason 2004 Exam pp.  81, 95-101.
[12] Rule 56(a)2 Stmt. ¶ 22 citing Biffinger Dep. at 57, Magdalenski R. 2004 Exam Exh. 18.
[13] *Id*.
[14] Opp'n Mot. at 10 citing Mason 2004 Exam at 30.

Defendants correctly point out, she has the burden of establishing at trial.[15] In cases such as this one, "where a defendant moving for summary judgment has pointed to the absence of evidence to support an essential element on which the plaintiff has the burden of proof, the plaintiff, in order to avoid summary judgment, must show the presence of a genuine issue by coming forward with evidence that would be sufficient… to establish the existence of that element at trial." *Azrielli*, 21 F.3d at 516–17.

Having provided no facts to support that the transfers were for or on account of an antecedent debt, the Trustee fails to establish that a material fact remains to be tried as to that element. Accordingly, an entry of summary judgment in favor of the Defendants on Count One as to Transfers Three, Four and Five, is granted as a matter of law.

*Transfer Six—Insurance Payment ($6,232.75)*

The Defendants first assert that the payment of its insurance premiums was not on account of an antecedent debt, and argue alternatively[16] that even if the premiums were a debt owed to Mr. Mason, they are subject to the contemporaneous new value exception. The Defendants assert that the payments made to Chubb were not payments of a debt owed Mr. Mason, but were instead part of the compensation for Mr. Mason's services rendered to SHE.[17] Mr. Mason asserts that because SHE paid Mr. Biffinger's health insurance premiums, SHE also paid premiums for his homeowner's insurance to Chubb so that he and Mr. Biffinger would have roughly equal pay.[18]

---

[15] The payments possibly, as the Trustee argues, could have been for no consideration. In which event, they could have been fraudulent transfers.

[16] The Court notes that the alternate argument, considered in Section C of this Memorandum of Decision, is logically inconsistent and probative of a material issue of fact.

[17] Rule 56(a)1 Stmt ¶ 15 citing Mason Aff. ¶ 16, Magdalenski Aff. ¶ 11.

[18] Mason Aff. ¶ 16.

The Trustee posits that Mr. Mason's only valid compensation from SHE was his salary, relying on Mr. Mason's answer to an interrogatory in which he stated, "the only compensation I received was W-2 salary and interest on a loan to SHE".[19] The Trustee also argues that if, as the Defendants assert, the insurance payments were regularly paid as compensation, their assertion is undermined by the fact that Mr. Mason did not claim such payments as compensation on his 2012 taxes.[20] Drawing all inferences in favor of the Trustee, the Court finds that the Trustee has raised a genuine dispute as to whether Transfer Six was for compensation, which is an issue properly left to be decided at trial.

The Court will now address the remaining transfers to which the Defendants have raised defenses which they assert otherwise defeat the Trustee's claims.

### C. 11 U.S.C. § 547(c) Defenses

Notwithstanding that a Plaintiff has met its burden as to the required elements of § 547(b), a Defendant may still prevail if it can establish a defense set forth under § 547(c). The provisions raised by the Defendants in their pleadings and memoranda of law are as follows:

> (c) The trustee may not avoid under this section a transfer—
> (1) to the extent that such transfer was—
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange;
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee

11 U.S.C. § 547(c).

---

[19] Rule 56(a)2 Stmt ¶ 19 citing Carreira Aff. Ex. 2, 3.
[20] Rule 56(a)2 Stmt ¶ 21 citing Carreira Aff. Ex. 3.

### i.  § 547(c)(2) Ordinary Course of Business Defense

Pursuant to § 547(c)(2)(A), the Defendants argue that Transfer One, consisting of  the monthly payments made pursuant to the Mason Note, is not subject to avoidance because the transfers were made within the ordinary course of business between SHE and Mr. Mason.

The ordinary course of business exception provides a safe harbor from the Trustee's avoidance powers for certain preferential payments, and generally protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *In re Quebecor World (USA), Inc.*, 518 B.R. 757, 762 (Bankr. S.D.N.Y. 2014) (citing Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.), 376 B.R. 442, 459 (Bankr. S.D.N.Y. 2007)). The policy behind the defense is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 41 (2d Cir.1996) (quoting H. Rep. No. 95–595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6329).

To invoke this exception, a defendant must establish by a preponderance of the evidence, first, that the debt at issue was incurred by the debtor and transferee in the ordinary course of business or financial affairs of the debtor and transferee, and second, that the transfer was made in the ordinary course of business or financial affairs of the debtor and transferee. *In re Affinity Health Care, Mgmt., Inc.*, 499 B.R. 246, 262 (Bankr. D. Conn. 2013). While the second element requires a court to examine the *transfer* itself, the first element, which courts often ignore, requires the court to examine the *debt* incurred for which the alleged preferential transfer was payment. 5 *Collier on Bankruptcy* ¶ 547.04[2][a], p. 547-50 (Alan N. Resnick & Henry J.

Sommer eds., 16th ed.). Therefore, "if the transaction from which the debt arose was not ordinary for the debtor or the transferee, then the defense will fail". *Id. See also In re Gawronski*, 411 B.R. 139, 141 (Bankr. W.D.N.Y. 2009) (explaining that payments made within the ordinary course does not determine the outcome because the defendant must also establish ordinary course with respect to the creation of the obligation). In determining whether such payments are incurred in the ordinary course of business, courts generally consider "whether or not the debt was incurred in a typical, arms-length commercial transaction that occurred in the market place, or whether it was incurred as an insider arrangement with a closely-held entity". *In re Affinity*, 499 B.R. at 263; *See* 5 *Collier on Bankruptcy* ¶ 547.03[6], p. 547-35 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

In support of the first element, the Defendants assert that "the debt instrument speaks for itself", because the Mason Note is an unsecured note that carries an annual interest rate of 3.75 percent, a favorable term for SHE.[21] The Defendants maintain that SHE executed a promissory note in the amount of $128,858 in favor of Mr. Mason, and reference the Mason Affidavit and the Magdalenski Affidavit. The Mason Affidavit merely states that on November 21, 2011, SHE owed Mr. Mason the sum of $128,858.[22] Similarly, the Magdalenski Affidavit simply states that SHE carried a loan to Mr. Mason on its books, and that Mr. Biffinger never stated to Mr. Magdalenski that SHE was not obligated to make payments to Mr. Mason pursuant to the Mason Note.[23]

The Defendants do not advance any evidence supporting that the first element of the defense—that the debt was incurred in the ordinary course of business—has been meet. The

---

[21] Summ. J. Mot. p. 7.
[22] Mason Aff. ¶ 7.
[23] Magdalenski Aff.¶¶ 6, 8.

Defendants fail to, in any way, substantiate what debt the Mason Note secured, what loan was given to SHE, or any other facts by which the Court can scrutinize the ordinariness of the creation of the obligation. The Court is not persuaded by the Defendants' argument that the debt instrument speaks for itself, and finds that neither affidavit bolsters the application of their defense. While the Defendants may have met their burden of proving that the transfers were made in the ordinary course of business, both elements of the defense must be proved. Accordingly, the Defendants cannot defeat the Trustee's claim on summary judgment with regard to Transfer One.

Even if the Court finds that the Defendants meet their evidentiary burden, the Defendants would nevertheless fail because the Trustee raised a genuine dispute of material facts regarding the origin of the debt. First, the Trustee argues that the Mason Note was not properly authorized by the company. She relies on the testimony of Mr. Mason who stated that, despite Mr. Biffinger having signed the Mason Note as its maker, he had no conversations with Mr. Biffinger or Mr. Magdalenski prior to making the Mason Note, and that it was solely his idea to create it.[24] Second, the Trustee posits that Mr. Mason himself does not know what portion of the Mason Note's value is attributable to loans made by SHE, rather than to its other related companies[25], and he was uncertain how he arrived at the figure owed pursuant to Mason Note.[26]

The Trustee persuasively posits that Mr. Mason testified that the Mason Note was created to pay the Defendants for lines of credit they had extended SHE some four or five years before the making of the Mason Note, but also testified that the extensions of credit were made to *either* Executive Companies, Executive Interiors, SHE, or Connecticut Modular, and that there was no

---

[24] Rule 56(a)2 Stmt ¶ 6 citing Mason 2004 Exam pp. 182-83.
[25] *Id.* ¶¶ 3, 25 citing Mason 2004 Exam p. 180, Trustee's First Set of Interrogatories nos. 4, 8, 11, 14, 15.
[26] Rule 56(a)2 Stmt ¶ 6.

way of figuring out how much of the balance was attributable to each company.[27] He also stated that although he arrived at the figure of the Mason Note using bank or other documents, the balance may have been one hundred thousand dollars, or one hundred and twenty five thousand dollars.[28] Mason's explanations of the inception of the Mason Note are the quintessential definition of "irregular" transactions.

Finally, the Trustee advances that the Mason Note was not created to repay him for a loan it allegedly make to SHE, but was for money Mr. Mason loaned SHE's predecessor company to pay for work it performed on Mason's home.[29] All of the Trustee's arguments raise genuine factual disputes as to whether the Mason Note was incurred in the ordinary course of business, thus making the issue inappropriate for the Court to determine on summary judgment.

Moreover, "a debt will be considered not incurred in the ordinary course of business if creation of the debt is atypical, fraudulent, or not consistent with an arms-length commercial transaction." *In re Affinity*, 499 B.R. at 262-63. The Defendants here are insiders pursuant to 11 U.S.C. § 101(31), which defines an insider by setting forth a list of relationships, including officer or director of a corporate debtor. *See* § 101(31). It is a triable issue whether the creation of the Mason Note by an officer of SHE is consistent with an arms-length transaction.

Accordingly, the Defendant's motion for summary judgment as to Transfer One is denied.

### ii.   § 547(c)(1) Contemporaneous Exchange for New Value Defense

The Defendants also assert that certain transfers are unavoidable because they were made in conjunction with providing a contemporaneous exchange of new value pursuant to 11 U.S.C.

---

[27] Mason 2004 Exam pp. 179-81.
[28] Id. at 180-81.
[29] Rule 56(a)2 Stmt. ¶ 4 citing Biffinger Aff. ¶¶ 10, 11, Biffinger Dep. pp. 20-21.

§ 547(c)(1). § 547 (c)(1) provides that the Trustee may not avoid transfers "to the extent that such transfer was—A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value[30] given to the debtor; and B) in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1). The Defendant must factually support three elements required by this defense: (i) the transfer must be for new value given to the debtor; (ii) the transfer must be intended to be a contemporaneous exchange; and (iii) the transfer must be in fact a substantially contemporaneous exchange. *Id*; *See In re 360networks (USA) Inc.*, 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005); *In re Pameco Corp.*, 356 B.R. 327, 338 (Bankr. S.D.N.Y. 2006). The purpose of the exception is to encourage creditors to continue to deal with troubled debtors, and transfers protected under § 547(c)(1) are not preferential because other creditors are not adversely affected if the debtor's estate receives new value. *In re 360networks (USA) Inc.*, 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005) (internal quotations omitted).

*Transfer Two—July 10, 2013 Payment ($5,700.00)*

The Defendants assert that Mr. Mason advanced the sum of $5,700.00 to SHE in the form of a personal paycheck to cover payroll, and it was anticipated that SHE would have sufficient funds to repay the advance within a few weeks time, after which, it repaid Mr. Mason.[31] The Defendants submit that the check was issued to SHE on June 24, 2013, and SHE paid the Defendants back on either July 2, 2013, or July 10, 2013.[32]  The first element of the defense is factually supported by the advance of $5,700.00 from Mason to SHE. The second element is also met, as the parties intended to pay back the advance when funds were available, within a

---

[30] "New value" is defined as "money or money's worth in goods, services, or new credit…but does not include an obligation substituted for an existing obligation". 11 U.S.C. § 547(a)(2).
[31] Rule 56(a)1 Statement ¶ 12-14 citing Mason Aff. ¶ 12-14, Magdalenski Aff. ¶ 9.
[32] Magdalenski Aff. ¶ 15; Mason Aff. ¶ 14.

specified period of time. Finally, notwithstanding the Defendants provided two dates upon which they assert SHE repaid the advance to Mr. Mason, either period of time—eight days or sixteen—based upon these circumstances, could sufficiently show a substantially contemporaneous transfer. *See id*. at 209 (quoting In re Bridge Info. Sys., Inc., 321 B.R. 247, 256-57 (Bankr. E.D. Mo. 2005)) (noting that the "determination of whether the exchange was in fact contemporaneous is a flexible one" and that the issue is not only proximity in time "but also whether the exchange occurred within the time frame established by the parties' agreement")

However, the Trustee raises a genuine dispute of material fact.  The Trustee denied the all of the Defendants' factual assertions, and cited a deposition of Mr. Magdalenski and the June Income Statement in support of her position. During the deposition, Magdalenski testified that unless the bank made an error, it would not be possible for deposits made into the SHE account to be absent from the SHE Income Statement.[33]  The Trustee, though failing to clearly address Transfer Two in her brief, appears to advance through Mr. Magdalenski's testimony and the June Income Statement that Transfer Two was not deposited into SHE's account.

Drawing inferences from the underlying facts in the light most favorable to the Trustee, the Court finds that the Trustee has shown a genuine dispute as to whether Mr. Mason made the alleged advance of $5,700 to SHE at all. Accordingly, summary judgment as to Transfer Two is denied.

*Transfer Seven—Bank of American Payments ($5,472.00)*

As to Transfer Seven, the Court finds that the Defendants have not satisfied either element of the contemporaneous exchange defense. The Defendants assert that, as part of normal business operations, officers and employees would pay for SHE expenses on their personal credit

---

[33] Magdalenski 2004 Exam pp. 77.

cards, and thereafter SHE would make payments directly to the personal credit cards.[34] As the Trustee argues, the Defendants rely on these contentions alone and fail to offer evidence of any payment, date or dates of transfers, or any employees to whom these payments were allegedly made as a mutually intended exchange. In offering no evidence to show whether any new value was given, what the intentions of the parties were, or if there was, in fact, a substantially contemporaneous exchange, the Defendants fail to meet their evidentiary burden under their motion. Accordingly, summary judgment as to Transfer Seven is denied.

*Transfer Six—Insurance Payment ($6,232.75)*

Turning lastly to the alternative argument that the transfer is subject to the contemporaneous new value defense, the Court similarly finds that the Defendants have offered no evidence to meet any one of the three elements of that defense. The record is insufficient to demonstrate what value was given, when it was given, or what the intentions of the parties were. Summary judgment as to Transfer Six is denied.

### D.  SUBORDINATION COUNT

Count Two of the Trustee's Amended Complaint seeks to subordinate the claims of the Defendants under 11 U.S.C. § 510 based upon alleged wrongful and inequitable conduct. The gravamen of the Defendants' argument is that they acted in good faith, and that the Trustee has not alleged inequitable conduct for the purposes of § 510(c)(1), namely: 1) fraud, illegality and breaches of fiduciary duties; 2) undercapitalization; or 3) claimant's use of the debtor as a mere instrumentality or alter ego.

While the Trustee generally advances facts of self-serving and suspect conduct by the Defendants, her responsive papers seem to mistakenly propose that she unilaterally reserves the

---

[34] Rule 56(a)1 Stmt. ¶ 25 citing Mason Aff. ¶, Magdalenski Aff. ¶ 16; Rule 56(a)1 Stmt. ¶ 26 citing Mason Aff. ¶ 28, Magdalenski Aff. ¶ 16.

right to address and pursue that relief at a later time, after a determination on the objection to the Defendants' proof of claim is made. There is no court order or stipulation in place that would support such a reservation.

While both parties' papers appear equivocal about pursuit of this issue, the Defendants have nonetheless asked for summary judgment on that claim. The Court is puzzled by their equivocation and the Trustee's lack of responsive papers that might well support an entry of summary judgment in the Defendants' favor on those claims. In the exercise of this Court's discretion, and to avoid manifest injustice, the Trustee will be allowed to file appropriate responsive papers, request permission to withdraw the subordination claims, without prejudice, or present an appropriate stipulation on this issue between the parties, within ten (10) days hereof.  A supplemental ruling by this Court on the subordination claims will issue thereafter.

VI.    CONCLUSION

For the foregoing reasons, the Summary Judgment Motion is denied in part, as to Count One, Transfer One, Two, Six and Seven, and granted in part, as to Transfers Three, Four and Five. The Court reserves decision on the Subordination Claim contained in Count Two.


Dated at Hartford, Connecticut this  31st day of March 2017.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*